UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIK D. LITTLE,

        Petitioner,

v.                                                   CASE NO. 08-10396
                                                         HONORABLE GERALD E. ROSEN

JAN TROMBLEY,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S HABEAS CORPUS PETITION BUT GRANTING A CERTIFICATE OF APPEALABILITY

This matter is pending before the Court on petitioner Erik D. Little's habeas corpus petition under 28 U.S.C. § 2254. The sole claim for relief alleges that Petitioner was deprived of his constitutional right to present a defense at trial. Having review the record, the Court agrees with Respondent that Petitioner is not entitled to relief. Accordingly, the habeas petition will be denied.

### I. Background

Petitioner was charged in Berrien County, Michigan with first-degree home invasion, assault with intent to commit murder, and assault with a dangerous weapon. The charges arose from an incident at the home of Petitioner's estranged wife on October 25, 2003. Early that morning, Petitioner broke into his wife's house in St. Joseph, Michigan and stabbed her male companion.

Evidence at Petitioner's subsequent jury trial established that Petitioner married his dentist, Shelley Wilson, on January 7, 2000. Problems developed in the marriage, and Petitioner moved out of the marital home in August of 2003. Ms. Wilson then changed the locks and

declined to give Petitioner a key to the house. She obtained a single-occupancy order for her home after she filed for divorce, and she informed Petitioner about the order on or about October 5, 2003. Petitioner's answer to the divorce complaint, filed through counsel on October 6, 2003, stated that the parties were no longer residing together.

On October 24, 2003, Ms. Wilson admitted Petitioner in her house. He became very upset when he discovered beer in her refrigerator and a condom wrapper in her trash. On October 25, 2003, Petitioner telephoned Ms. Wilson early in the morning while Ms. Wilson and her friend Scott Desenberg were present in the residence. Ms. Wilson declined to answer the telephone after determining that Petitioner had made the call. A short while later, someone banged on her outside door. She and Mr. Desenberg initially ignored the knocking and moved from the living room to an upstairs bedroom. When the banging did not stop, Ms. Wilson went downstairs and talked to Petitioner through the door. She told him that he should not be there. Petitioner refused to leave, and their discussion escalated into an argument. When he asked whose shoes were setting by the back door, Ms. Wilson explained that the shoes belonged to a friend of hers and that her friend would not leave until Petitioner left. Petitioner then punched his fists through two window panes in the door and unlocked the door. Ms. Wilson tried to keep him out, but he walked past her toward the living room even though some of the glass hit her face and feet.

Upon hearing the glass break, Scott Desenberg went downstairs and walked toward the hallway to the kitchen. Petitioner rapidly approached Desenberg and said, "Who are you? Do you know this is a married woman?" Desenberg grabbed Petitioner by the lapels and told him to leave. Petitioner then stabbed Desenberg in the abdomen. Desenberg pulled back and grabbed

Petitioner's wrist with both of his hands. In the process, Desenberg lost his balance, and the two men fell backward onto a couch. Petitioner tried to stab Desenberg a second time, but Desenberg, who was a few inches taller and ninety pounds heavier than Petitioner, managed to roll over and flop Petitioner down on a nearby bed. Petitioner continued to struggle with Desenberg for control of the knife. He stopped struggling after Desenberg broke one of his (Petitioner's) fingers. Petitioner questioned Desenberg about being sexually intimate with his wife. Meanwhile, Ms. Wilson called the police department. Desenberg held Petitioner down until the police arrived. Petitioner then released the knife into Desenberg's hand. Petitioner later stated to a police officer, "I cannot believe my wife did this to me."

Charles Wallace testified that he dated Ms. Wilson for several years, but that they had stopped dating about five years before Petitioner's trial. According to Mr. Wallace, Petitioner came to Wallace's place of employment one day and told Wallace that he would kill him if he did not stay away from Ms. Wilson.

Petitioner's father, Dennis Little, testified for the defense that, about five weeks before trial, Ms. Wilson informed him that she knew people in high places and that Petitioner was going to prison, but she might change her trial testimony if Petitioner treated her favorably in the divorce proceedings. According to Mr. Little, Ms. Wilson called him the next night and asked him whether he had thought about the deal she offered to make on the previous day. At trial, Ms. Wilson denied making an offer to change her testimony if Petitioner did not "clean her out" in the divorce process.

Petitioner testified that he never relinquished his right to live in the marital home and that he did not know about the exclusive-occupancy order until November 8, 2003. He also testified

3

that he routinely carried a knife and that he did not remember stabbing Scott Desenberg, although he was sure that he pulled out a knife at some point on the night in question. He claimed that he was frightened at the time and that he did not intend to harm anybody. A number of defense witnesses testified that Petitioner was peaceful and honest.

Petitioner's divorce attorney testified on rebuttal that Petitioner was not living with his wife when he asked the attorney to represent him in the divorce action. The attorney also stated that Petitioner was aware of a stipulation to give Ms. Wilson exclusive occupancy of the former marital residence. The attorney signed the stipulation on October 8, 2003.

In separate records held outside the jury's presence, Petitioner attempted to show that Ms. Wilson abused drugs. In one such proffer of evidence, Petitioner's friend, Matthew Bishop, testified that Petitioner had shown him Ms. Wilson's pills and stated that he (Petitioner) was afraid Ms. Wilson would hurt herself. And, according to Mr. Bishop, Ms. Wilson acknowledged during a telephone conversation with Petitioner that Petitioner left her "because of the drugs."

Petitioner testified in a separate record that his argument with Ms. Wilson on October 24, 2003, was about her pills and that he went to her house on October 25, 2003, to check on her. In another separate record, Petitioner's brother testified that Petitioner was concerned about his wife being suicidal because she was on drugs.

Ms. Wilson testified outside the jury's presence that she took an anti-anxiety drug called Paxil from May to July of 2003. She claimed that Petitioner thought she had a drug problem, but that was in his mind.

The trial court ruled that Petitioner could not present evidence of his wife's drug habits. The trial court stated that the evidence was irrelevant and, even if true, the evidence did not

4

create a legal defense to the charges.

The prosecutor's theory was that Petitioner acted intentionally and stabbed Scott Desenberg out of jealousy. Petitioner's defense to the assault charge was that he stabbed Desenberg impulsively, without intent, and in self defense. His defense to the home invasion charge was that he had a right to go in the house. In the alternative, he maintained that there was no assault and, therefore, no underlying felony to support the home-invasion charge.[1]

The trial court instructed the jurors on lesser-included offenses, but on February 5, 2004, a Berrien County jury found Petitioner guilty, as charged, of first-degree home invasion, Mich. Comp. Laws § 750.110a(2), assault with intent to commit murder, Mich. Comp. Laws § 750.83, and assault with a dangerous weapon, Mich. Comp. Laws § 750.82. The trial court sentenced Petitioner to imprisonment for five to twenty years for the home invasion and to a concurrent term of nine to twenty years for assault with intent to commit murder. The trial court declined to sentence Petitioner on assault with a dangerous weapon for double jeopardy reasons.

Petitioner appealed as of right, claiming that the trial court deprived him of his right to present a defense when it refused to permit him to introduce evidence of his wife's drug abuse. The Michigan Court of Appeals was unpersuaded by the argument and affirmed Petitioner's convictions in an unpublished *per curiam* opinion. *See People v. Little*, No. 260100 (Mich. Ct. App. Aug. 22, 2006). On January 29, 2007, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issue. *See People v. Little*, 477 Mich. 1004; 726 N.W.2d 35 (2007) (table). Petitioner filed his habeas corpus petition on January 28, 2008.

---

[1] The home-invasion count was based on the theory that Petitioner broke and entered his wife's house and committed a felony while present in the dwelling. *See* Mich. Comp. Laws § 750.110a(2).

## II. Standard of Review

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, habeas petitioners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409. A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

## III. Discussion

Petitioner alleges that was denied his constitutional right to present a defense by the trial court's refusal to permit him to present evidence of his estranged wife's use of drugs. Petitioner contends that the excluded evidence would have explained why he was present at his wife's

home and why he acted as he did after he arrived at the house.

## A. Clearly Established Federal Law

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. This right is abridged by evidence rules that infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve.

*Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation marks and citations omitted).

However, a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). When determining whether a defendant's constitutional right to present a defense was violated by a court's decision to exclude evidence, courts consider the relevance of the excluded evidence and the extent to which it was central or indispensable to the success of the defense. *Gagne v. Booker*, __ F.3d __, __, No. 07-1970, slip op. at 8-9 (6th Cir. May 25, 2010). A habeas court's "task is not to reach [its] own independent conclusion regarding the constitutional validity of the evidentiary decision to exclude evidence; rather, [the Court] must determine if the last reasoned state court opinion was either contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States." *Id*. at 10-11.

## B. Application

As noted, Petitioner made several attempts at trial to present evidence that his wife, Shelley Wilson, abused drugs and that he broke into her home because he was concerned about her. The trial court stated that the proposed evidence constituted an attack on Ms. Wilson's character and that the evidence was irrelevant to the charges. The Michigan Court of Appeals

7

determined that the trial court did not err in excluding the evidence, nor deprive Petitioner of his constitutional right to present a defense.

Petitioner claims that the excluded evidence would have provided the jury with credible reasons to doubt the prosecutor's theory that he acted out of jealousy and revenge. However, his intent when he broke into the house was irrelevant because he was charged with committing an assault *after* he entered the house. Furthermore, his concern for his wife did not justify breaking into the house once she came to the door and talked to him. He testified that she was acting strangely at the time, but there was no evidence that she was adversely affected by drugs or alcohol. And the fact that Petitioner immediately went to the living room after breaking into the house was evidence that he was not concerned about his wife.

Petitioner contends that he should have been permitted to show that his wife's sister and brother-in-law facilitated Ms. Wilson's drug habit and that he thought the shoes at the entrance to Ms. Wilson's home belonged to them. This evidence, he contends, would have explained why he rushed past his wife when he entered the house: he expected to find and confront his wife's sister and brother-in-law. The Court, however, believes that this explanation for Petitioner's conduct is implausible, given the fact that his wife was injured by shattered glass when Petitioner put his fists through window panes in the door to the house. His comments to Scott Desenberg ("Do you know this is a married woman?") and to the police ("I cannot believe my wife did this to me.") suggest that he was motivated by jealousy, nor concern for his wife.

Even if testimony about Ms. Wilson's alleged drug habit would have provided some justification for Petitioner's forced entry into the house, it was not relevant to the subsequent assault on Scott Desenberg. As the state appellate court recognized, Petitioner's concern for his

8

wife did not make his self-defense theory more probable.

Furthermore, Petitioner was permitted to establish his defense to the crimes. He claimed entitlement to enter the house and lack of intent to hurt Scott Desenberg. He testified that he was surprised to see Desenberg at the house and that Desenberg scared him. Desenberg, moreover, admitted that he initiated physical contact with Petitioner and that Petitioner did not swing at him before he grabbed Petitioner.

Despite the trial court's evidentiary ruling, Petitioner managed to testify that the argument with his wife on October 24, 2003, was due to a medication problem she had and that he was concerned about her medications. He denied that the argument was about his discovery of beer in her refrigerator and condom wrappers in her trash. He also testified that his reason for going to Ms. Wilson's house on October 25, 2003, had nothing to do with jealousy. He claimed that he became a little concerned when he knocked on the door and no one responded. He stated that Ms. Wilson had been found on the floor a few times and that she was not acting normally when she came to the door on October 25, 2003. He stated that he knocked out the window because he was concerned about her and intended to help her.

The trial court subsequently instructed the jury on self-defense. The trial court also informed the jury that a person cannot commit the crime of home invasion if he has a legal right of occupancy.

### IV. Conclusion

To summarize, Ms. Wilson's alleged drug abuse was not relevant to the breaking and entering charge because the home-invasion charge was based on the contention that Petitioner committed an assault after he entered the house. The alleged drug abuse also was not relevant to

9

the subsequent assault on Scott Desenberg because the facts indicated that Petitioner's alleged concern for his wife played no part in the assault on Desenberg. Petitioner claimed that he acted impulsively, had no intent, and stabbed Desenberg in self defense.

The Court concludes that the excluded evidence was not "highly relevant" or "indispensable" to the success of Petitioner's defense. Furthermore, Petitioner was not precluded from presenting his defense. Therefore, the state appellate court's holding – that Petitioner was not deprived of his constitutional right to present a defense – did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. The petition for a writ of habeas corpus is **DENIED**.

## V.  Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists could debate the Court's resolution of Petitioner's claim or conclude that the issue deserves encouragement to proceed further. The Court therefore **GRANTS** a certificate of appealability.

10

                            <u>s/Gerald E. Rosen</u>
                            Chief Judge, United States District Court

Dated: May 27, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 27, 2010, by electronic and/or ordinary mail.

                            <u>s/Ruth A. Gunther</u>
                            Case Manager